IN THE MATTER OF THE SEVERAL PETITIONS OF LAURA E. EAGER, HANNAH ALLEN, ROBERT J. DILLON and others to vacate assessments for paving Irving Place, Nineteenth street and Sixteenth street.

The act of the legislature, of April, 1870, making further provision for the government of the city of New York, (*Laws of* 1870, *p.* 881,) does not apply to cases which had arisen before the passage of such act; but was prospective only, in requiring the amount erroneously assessed to be deducted.

It is erroneous to charge upon the owners of lots assessed for laying a Nicolson pavement, the cost of crosswalks directed by the ordinance, but which have not been actually laid.

A charge of two and one half per cent for collecting an assessment is not erroneous. The statutes give the percentage on the whole amount assessed and collected.

A contract for laying a pavement should not include an allowance to be paid to the contractor for extra compensation in case the work shall be completed before the time fixed by the contract.

THESE several proceedings were instituted under the act of the legislature in relation to frauds in assessments for local improvements in the city of New York, (*Laws of* 1858, *p.* 574,) to vacate assessments imposed on the property of the respondents for paving Irving place, Nineteenth street and Sixteenth street, in the city of New York, with Nicolson pavement. Each of the assessment lists was confirmed on the 1st day of September, 1869. The resolution and ordinance relative to each street provide that the streets be paved with Nicolson pavement, where not already paved with Belgian pavement, and crosswalks laid or relaid at intersecting streets, under the direction of the Croton Aqueduct department. The Mayor vetoed all the resolutions and ordinances, but the common council passed them over his veto.

On the 26th of April, 1870, the legislature passed an act making further provision for the government of New York, (*Laws of* 1870, *p.* 881,) section 27 of which (p. 903) reads:

"If, upon the hearing of proceedings brought pursuant

to the act known as chapter three hundred and thirty-eight of the laws of eighteen hundred and fifty-eight, entitled 'An act in relation to frauds in assessments for local improvements in the city of New York,' passed April seventeenth, eighteen hundred and fifty-eight, it shall appear that the alleged fraud or irregularity has been committed, the assessment shall be vacated or modified as hereinafter provided. If, upon such hearing, it shall appear that, by reason of any alleged irregularity, the expense of any local improvement has been unlawfully increased, the judge may order that such assessment upon the lands of said aggrieved party be modified by deducting therefrom such sum as is in the same proportion to such assessment as is the whole amount of such unlawful increase to the whole amount of the expense of such local improvement. No assessment shall be vacated pursuant to the act hereby amended by reason of fraud or irregularity in the proceedings to collect the same by sale of the assessed premises; but, upon proof of such fraud or irregularity, such sale shall be set aside and the respective rights and liabilities of the assessed persons, and of the mayor, aldermen and commonalty of the city of New York, shall become and be the same as if such sale had not been made."

The contracts for the work were all made with the Nicolson Pavement Company, are all in the same form, and are dated March 31, 1869. In each of the assessment lists a charge is included for the completion of the work inside of the contract time.

In Nineteenth street this allowance is .    . $283 50
In Irving place .    .    .    .    .    .      84 00
In Sixteenth street ·    .    .    .    .    . 168 00

The Nicolson pavement is a patented article, and the Nicolson Pavement Company have the exclusive right to lay the same in the city of New York. The advertisement issued by the Croton Aqueduct department calls for proposals and bids for contracts for Nicolson pavement,

and no other, in these streets. ·It was dated July 25, 1868, and the only bid received was from the Nicolson Pavement Company. The charge for collection, in each of the assessment lists, was as follows:

| | |
|---|---:|
| Nineteenth street | $1248 60 |
| Irving place | 667 76 |
| Sixteenth street | 613 48 |

Two and one half per cent was the amount allowed by the ordinance to the collector on all items of assessment collected, and two per cent on all unpaid items of assessment. Each of these charges exceeds two and one half per cent on the items, making up the total assessment, exclusive of the item for collection. Mrs. Eager's property is at the corner of Nineteenth street and Irving place. Mrs Allen's, corner of Sixteenth street and Irving place. Mr. Dillon's, corner of Fourth avenue and Sixteenth street. Mrs. Eager's lot is 105 feet 8⅔ inches on Nineteenth street and 25 feet on Irving place. Her lot was assessed for paving Irving place $365.68, for paving on Nineteenth street $844. Mrs. Allen's lot is 86 feet 4 inches on Sixteenth street, and 20 feet 1 inch on Irving place. It was assessed for paving Irving place $297.93, for paving Sixteenth street $708.60. Mr. Dillon's lot is 26 feet on Fourth avenue, and 125 feet on Sixteenth street. It was assessed $1066.14.

No crosswalks whatever were laid or relaid at the intersection of Irving place and Nineteenth street, or Irving place and Sixteenth street. Before the Nicolson pavement was laid, there were the ordinary crosswalks or bridge stones there, but they were taken up and the Nicolson pavement substituted for them. The charge in the assessment list for bridge stones, in Nineteenth street, was as follows: 772 square feet, at $1.30 per square foot, making $1003.60. On Irving place, for 259 square feet of new bridge stones, at $1.30, making $336.70. On Sixteenth street, it was for 616 square feet of bridge stones,

at $1.30, making $800.80. · The advertisement for proposals for bids did not call for any bids for the work of laying bridge stones or crosswalks.

The cases were argued at the special term before Justice Brady, on the 20th of April, 1870, who rendered the following opinion and decision :

BRADY, J.   There are two objections taken to the assessments imposed upon the lands of the petitioners which are well taken.

*First.* The charge for crosswalks of stone, none having been laid, and none others having been authorized.

*Second.* The charge for collection in excess of two and a half per cent allowed by law.   These charges are legal irregularities within the decisions of this court relative thereto, and the assessments must be vacated under the act of 1858.   (*Laws of* 1858, *p.* 574, § 2.   *Matter of Wood,* 51 *Barb.* 275.   *Matter of Lewis,* 35 *How.* 162.   *Matter of Babcock,* 23 *id.* 118.   *Matter of Beams,* 17 *id.* 459.   *Matter of Buhler,* 19 *id.* 317.   *Matter of Astor, N. Y. Trans. Feb.* 8, 1869.)   Section 27 of the act of 1870, chapter 383, passed April 26, 1870, might render these objections valueless, but that act was not passed when these applications were heard ; has no retroactive effect, therefore ; and the irregularities under its provisions cannot be remedied.   I have examined all the points submitted in reference to the proceedings for the assessments objected to, and my judgment is that none of them except those embracing the items mentioned are well taken.

I deem it unnecessary to say anything further in deciding these applications, except that the principle upon which the assessment is made is not the subject of review under the act of 1858, (*supra.*)   If erroneous it is not a legal irregularity within the meaning of that act.   The land of the petitioners and others subject to assessment for the improvement made, may, therefore, be again assessed as

provided by the act of 1858, (*supra,*) the charge for crosswalks and the charge for collecting, already considered, being excluded from the expenses of the improvement, and the expenses of the new assessments being also excluded.

From the above decision the corporation appealed.

*A. J. Vanderpoel,* for the appellants.

I. The act of 1870 applied to these proceedings, and the judge, instead of vacating the assessments, should, as to the amount which he adjudged to have been unlawfully increased, have modified the assessment by deducting therefrom such sum as was in the same proportion to such assessment as was the whole amount of such unlawful increase to the whole amount of the expense of such local improvement. This would have done substantial justice to both parties. 1. The operation and effect of the act of 1858, until so modified, was always burdensome and unjust. 2. There is no reason why the act of 1870 should not be held to apply.

II. It was not a valid objection to the assessment that there was a charge for crosswalks of stone when none had been laid.

III. There was no excess in the charge for collection of the two and a half per cent allowed by law. The collector is entitled to a compensation of two and a half per cent upon all moneys collected. The two and a half per cent, to wit, his fees, are as much a charge and lien upon the property as any other item properly and necessarily included in the assessment. The whole amount of money to be paid to the collector must necessarily be included in the assessment, and this whole amount is paid over by the collector to the city treasury and repaid to him therefrom. The statute is: "The collector and the deputy collector shall each receive as compensation for their services, an equal part of two and one half per cent on all items of

assessments collected by the bureau. * * No moneys, however, collected on any assessment, shall be retained on account of such fees or compensation, but the amount of fees thereon shall be paid monthly on the requisition of the street commissioner to the extent of any moneys which may have been collected and paid into the city treasury, upon such assessment or interest moneys accruing thereon. No moneys collected on any assessment shall be retained on account of the compensation herein provided, but such compensation shall be paid by warrant of the comptroller on the requisition of the street commissioner." (1 *Hoffman's Laws*, 240.)

IV. The proceedings were in all respects regular, and the order should be reversed.

*A. R. Lawrence, Jr.*, for the respondents.

I. The order below was right and should be affirmed. 1. The resolutions and ordinances of the common council, authorizing the laying of Nicolson pavement in Irving place, Sixteenth and Nineteenth streets, express the will of the mayor, aldermen and commonalty of the city of New York, as to the kind of work to be performed, and any item of work not authorized by such resolutions and ordinances and included in the assessment list, as a part of the assessment, vitiates the assessment. It appears from the evidence, that the common council directed that crosswalks should be laid or relaid at the intersecting streets. And it also appears from the evidence that no crosswalks have been laid or relaid, either at the intersection of Irving place and Sixteenth street, or at the intersection of Irving place and Nineteenth street. On the contrary, it affirmatively appears that the old crosswalks at the intersections of these streets, existing at the time the work in question was performed, have been taken up, and that the Nicolson pavement has been substituted for them. Here, then, are eight crosswalks which the common council have

directed should be laid or relaid, and which the owners of property assessed for the alleged improvement are deprived of. If eight can be omitted, on the same principle eighty can be omitted; and if, under a resolution directing a crosswalk to be laid, a wooden pavement can be substituted for such crosswalk, on the same principle, where the common council directs that a street shall be paved with trap-block or Belgian pavement, such street can be paved with concrete, wood, or an entirely different substance or material. 2. In the case of the *Matter of Wood*, (51 *Barb.* 275,) where the contract and specifications did not provide for the taking up of gutter stones, and paving in their place with Belgian pavement, but required the contractor to readjust the same, the contractor removed the gutter stones and substituted the pavement. This court, at general term, held that there was no authority for such substitution, and vacated the assessment on that ground. If the court will vacate an assessment because work is performed, and charged for in the assessment list, which is not authorized by the contract, or is in conflict with its provisions, it clearly will vacate an assessment where work is done which is not authorized by, and which is in conflict with, the provisions of the ordinance and resolution directing the street to be paved. 3. It should be borne in mind, in this connection, that the statutes under which these assessments are laid are in derogation of the rights of the citizen; that under them his property may be sold and taken from him. All proceedings taken under such statutes, as well as the statutes themselves, should, therefore, be strictly construed. (*Sharp* v. *Speir*, 4 *Hill*, 76. *Sharp* v. *Johnson*, *Id.* 92.) 4. The property owner is entitled to demand that the very improvement which the proper representatives of the municipality have determined to be necessary, shall be completed before he pays his money. The common council have only authorized their officers or the officers of the city to assess him

for a certain work, and it does not lie in the power of the assessors to create a lien on his land for another and a different work. (*Matter of Mott, MS.; and cases cited in Judge Brady's opinion.*)

II. It cannot be said that as the ordinance provides that the street shall be paved, and that crosswalks be laid and relaid at the intersecting streets, under such directions as shall be given by the Croton Aqueduct department, therefore such department may authorize the contractors who do the work to omit the crosswalks at an intersecting street. In point of fact, the contractors did not follow the instructions of the department, as they laid neither parallel nor transverse crosswalks at those intersections. 1. Such a construction would be a manifest perversion of the language of the ordinance, because the words "under such directions," &c., apply as well to the pavement as to the crosswalks. And if they can be said to mean that the Croton Aqueduct department may permit the omission of a crosswalk, they may, with equal truth, be said to mean that said department can direct that a certain part of the street shall not be paved. If the words mean that the discretion given to the department is to be so exercised as to control the direction of the common council, then it necessarily follows that upon the department devolves the right to say whether a block, or two blocks, or the whole street shall remain unpaved. 2. But it is unnecessary to give to the words of the ordinance any construction so forced or violent. The true meaning of the language of the ordinance is, that the work directed by the common council shall be executed under the supervision of the Croton Aqueduct department, i. e., the department is to ascertain whether the work is done according to the directions given in the resolution or ordinance, and the members of the department are to direct those performing the work to that end and for that purpose. 3. In the case of *Wood,* above referred to, it was sought to justify the substitution

of the Belgian pavement for the gutter stones, on the ground that the water purveyor, representing the department, had assented to the change, but the court held that he had no authority to give such assent, so as to bind those whose property was to be assessed to defray the expense of the improvement. (*Matter of Wood*, 51 *Barb.* 276.)

III. The order below should also be affirmed for the reasons stated in the following points: 1. The allowance to the contractor of three and a half dollars per day for each day that the work was completed prior to the time specified in the contract, was clearly irregular and illegal. The evidence shows that at the time these contracts were advertised and entered into, there were no parties in the city of New York, other than the Nicolson Pavement Company, who were authorized to lay such pavement. The company claim that there are are other wooden pavements which are infringements of their patents, but there are and were no other parties who claimed the right to lay Nicolson pavement, as such. The advertisement called for Nicolson pavement, and that company was the only bidder. Now, even if it be conceded that where a work is, or can be, a matter of competition, the element of time can be properly taken into estimation in determining who is the lowest bidder, it is clear that in the case of a patented article, for which alone the bids are to be received, and where such bids can come from only one party, no allowance for doing the work within the time required by the contract is proper. The company name their time in their bid, and the allowance to them of compensation for doing the work within that time is no legitimate part of the expense of the work. 2. Again; the act of 1813, section 175, under which the mayor, aldermen and commonalty are authorized to make assessments for these local improvements, only permits an assessment to be made for the expense of conforming to the regulations specified in the section. (*Davies' Laws*, p. 526.) Now,

the allowance in question is a mere gratuity, and is no part of the expense of conforming to the regulation of the mayor, &c., of New York. 3. It seems to us that a moment's reflection will show that this point is well taken. If the contractor who has no competitor can be allowed compensation for ten days, within which he may perform his work inside of the contract time, he can be allowed for five hundred days, and he is thus placed in a position which puts the city authorities, and those who are assessed, at his mercy. 4. The abuses to which an allowance of extra compensation for performing the work within the time specified in the contract may lead, can at once be seen by referring to the proofs in these cases. The contract time on Irving place was 150 days. Work was completed in 126 days, and the contractor was allowed compensation at the rate of $3.50 per day for the remaining 24 days. On Nineteenth street the contract time was 200 days. It was completed in 119 days. The extra allowance was for 81 days, at same rate. On Sixteenth street, contract time was 120 days. Work was completed in 72 days. The extra allowance was for 48 days. 5. The principles laid down by Judge Brown, in the case of the *People* v. *Village of Yonkers*, (39 *Barb.* 266,) are applicable to this case. In that case, where the estimates of the expenses of a local improvement inserted in an assessment list were specifically enumerated, there was a charge of $460.05 for " contingencies." It was held that the insertion of this item rendered the whole assessment illegal and void.

IV. The whole proceedings to impose an assessment in these cases are illegal and void, for the reason that there was no advertisement for proposals, nor letting of the contracts, in conformity with the provisions of the 38th section of the charter. 1. As we have before seen, the Nicolson pavement is a patented article, and no person or company, other than the Nicolson Pavement Company,

had authority to lay such pavement in the city of New York, at the time these contracts were let. Now, as the resolutions and ordinances called only for the Nicolson pavement, it is quite apparent that there could be no competitive bidding, and that if the work was done by any one, it must fall to the Nicolson Pavement Company. The evidence in the cases, therefore, showing an advertisement for proposals and bids, and that one bid was received from the company, and the contract awarded to them, does not show a compliance with the spirit and intent of the language of the charter. (*Charter*, § 38.)

V. The point last taken is not really affected by the decision of this court, at general term, in the case of *Astor* v. *The Mayor &c.* (not reported.) 1. The opinion of Judge INGRAHAM, in that case, was delivered upon an application for an injunction to restrain the making of contracts for the pavement. At that time no work had been done, and no assessment had been laid, nor was it at all certain that any assessment would ever be laid upon the property owners whose lands were supposed to be benefited by the improvement. The real point of that decision was, that the city was not to be excluded from using a patented article because there could be no competitive bidding for the work of furnishing such article. It may well be that the city could use a patented article, and pay the cost thereof out of its own treasury, but we insist that when it is proposed to defray the expense of a local improvement by an assessment upon the adjoining property, the owners of such property are entitled to have the work let in the manner provided by the charter. The reasoning of the court in the case of *Dean* v. *Charlton*, (7 *Am. Law Reg.* 564,) we submit, is conclusive as to this point.

VI. Assuming, however, that it is within the power of the municipal authorities to use any pavement which, being a patented article, cannot be the subject of competitive bidding, and also assuming that the 38th section of

the charter does not apply in such cases, the assessments in question are void, for the reason that the work of laying down the crosswalks or bridge stones is properly a subject of competition, and that such work was not let in the manner provided by the charter.  1. It appears, from the advertisement produced in evidence, that the proposals only called for Nicolson pavement.  It also appears, from the testimony of Dodge, the contract clerk in the Croton Aqueduct department, that "there would have been no difficulty in advertising for the bridge stones separately." It also appears from the evidence, that in each of the streets in question, the cost of laying such crosswalks and bridge stones as were laid, exceeded the sum of $250. There were 772 square feet laid in Nineteenth street, at $1.30 per square foot, making $1003.60.   There were 259 square feet laid in Irving place, at $1.30 per square foot, making $336.70.   There were 616 square feet laid in Sixteenth street, at $1.30 per square foot, making $808.80. 2. It cannot be said that because the resolutions and ordinances were passed by a three-fourths vote of the common council, the necessity of a contract was dispensed with, because the resolutions and ordinances do not direct that the work shall be done without a contract.  The charter provides that all work involving an expenditure of more than $250 shall be by contract, &c., unless by a vote of three fourths of the members elected to each board it shall be otherwise ordered.  (§ 38.)  The mere fact that a resolution or ordinance directing work to be done, but silent upon the point whether there shall be a contract or not for such work, receives a vote of three fourths of the members elected to each board, does not dispense with the necessity of a contract.  The common council must declare, upon the face of the resolution or ordinance, that they desire to have the work done in a different manner from that prescribed by the charter, as the general rule— to wit, without a contract.  Any other construction is in

conflict with the plain terms of the charter, and will authorize the executive departments to dispense with the formality of a contract let as required by the charter, where there is not the slightest intimation on the part of the common council that they intend to waive such formality, or to depart from the provisions of the charter.

VII. We are well aware that in some cases it has been held that the objections taken in the fifth and sixth points cannot be raised in proceedings instituted under the act "in relation to frauds in assessments for local improvements in the city of New York." (*Laws of* 1858, *p.* 574. *Miller's case*, 12 *Abbott*, 121.) Those cases were decided at special term in 1861, before the act in question had been the subject of much judicial examination, and the point has never, so far as we know, been passed upon by the general term. Since then the courts have been disposed to adopt a much more liberal rule in applying the statute, and we submit with confidence, that an omission to contract for work, as required by the charter, is now to be considered as a good ground for relief under the statute. The act is a remedial statute, and should be liberally construed. (*Matter of Eightieth street*, 17 *Abb.* 325. *Mott's case, MS.*)

VIII. The evidence shows that in making the assessments in question, the assessors did not follow the provisions of the act of 1813, section 175. That section provides "that it shall be lawful for the mayor, aldermen and commonalty to cause common sewers &c. to be made &c., and to order and direct the pitching and paving the streets thereof, &c., and to cause estimates of the expense of conforming to such regulations to be made, and a just and equitable assessment thereof among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire." 1. The evidence of Mr. Robert J. Dillon shows that the assessors

did not, in determining the amount to be assessed on each lot, govern themselves by the benefit which such lot derived from the improvement, nor did they ascertain what property was actually benefited. Mr. Dillon testifies that, in an interview he had with the assessors, "I asked Mr. Tweed, and also Mr. Hart, whether they thought that my property was benefited to the amount of the assessment, and they said 'No.' Mr. Tweed then said, in substance, that they made their assessment without reference to the question of benefit. That they ascertained the amount of the contract, and the lineal feet on either side of the improvement, and divided it, or something nearly to that effect. I asked him if he had read the act of the legislature authorizing the common council to make improvements, and the ordinance of the common council ordering the improvement to be made, and the terms of the oath taken by the assessors, which I told him, in my opinion, required the assessment to be made according to benefit. He said he did not look at it in that light, or something to that effect." The testimony of Hart, one of the assessors, is to the same effect. *Q.* " Your general rule is to take the frontage of each lot and assess on that lot the proportion of the expense which that frontage bears to the whole line of the work. I mean by this, that if the whole line of the improvement is 2500 feet, and the lot is 25 feet, and of the usual depth, you would assess it for one hundreth part of the expense ?" *A.* " Yes, sir." *Q.* " Suppose a lot is 80 feet in depth and 25 feet in width on the improvement, do you not assess it for the same amount as a lot of the same width would be which is 100 feet in depth ?" *A.* " Yes, and even if it is 50 feet in depth." *Q.* " When do you vary the assessment on lots of equal width but of unequal depth, and upon what principle ?" *A.* " If we have a lot 25 feet front, 100 feet deep, and 50 feet wide in the rear, we assess it the same as we do a lot 25 by 100 feet."

It is quite apparent that no effort was made by the assessors, therefore, to ascertain what property was benefited by the alleged improvements. They arbitrarily assumed that they could not go beyond property which was half the distance to the next street or avenue as their area of assessment, or assessment district; and then having ascertained the number of lineal feet on the line of the improvement, they assessed each lot for that proportion of the whole expense which the frontage of said lot bore to the whole number of lineal feet on the street. We respectfully submit that the principles advanced by the Supreme Court, in *Le Roy* v. *The Mayor &c. of New York*, (20 *John*. 429,) control this branch of the case, and that, under the authority of that case, the assessments in question are erroneous in principle. (*See also Bouton* v. *Brooklyn*, 2 *Wend*. 395.) We presume that the assessors have been led into this error by supposing that their powers were limited in assessing for a local improvement, in the same manner as commissioners are limited in assessing for a benefit for opening a street. But they are not so limited. The commissioners are restricted by the statute in assessing for benefit for opening streets, to property fronting on the line of the improvement, "or being at or within half the distance of the next street or avenue, &c., on each side thereof, and which the said commissioners may deem benefited," &c. (*Act of* 1813, § 177, *Davies*, *p*. 530.) But the assessors are "to make a just and equitable assessment &c. among the owners &c. of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire." (*Davies*, 526, § 175.)

IX. The assessments are also erroneous in principle, for the reason that the corner lots, affected by the same, are assessed as if they were three or four full lots on the side street, and as one full lot on the street or avenue on which they front.

Mr. Tully says that "the rule for corner lots is to assess three quarters of the depth, but the lot has to pay its proportion of the intersection besides. I mean by this, that a corner lot, running parallel with the line of the work is assessed for three quarters of its depth. A corner lot fronting on the work is assessed for its frontage, and also for intersections. For intersections we charge the full depth of the lot." *Q.* " Then the result is that a corner lot of twenty-five feet by one hundred, running parallel in its depth with the line of the work, is assessed three times as much for the improvement as a lot twenty-five by a hundred feet which fronts at right angles to the street?" *A.* "Yes." This evidence was objected to, and taken, subject to objection of the corporation counsel, but we submit it was proper. The practical injustice of this rule can be seen by looking at a few of the cases. Mrs. Allen's corner lot is assessed for Irving place, $297.93; the same lot is assessed for Sixteenth street, $708.60, amounting to $1006.53. Her lot is twenty feet one inch on Irving place, and eighty-six feet four inches on Sixteenth street. The lot adjoining, on Sixteenth street, is twenty-two feet wide, and ninety-two feet deep, and, of course, contains more square feet than hers. It is assessed, for Sixteenth street, $229.74. Her lot, for the purposes of the Irving place assessment, is therefore regarded as a full lot on that street, and for the purposes of the Sixteenth street assessment, it is regarded as over three full lots on Sixteenth street. With less superficial area than the adjoining lot on Sixteenth street, she is called upon to pay more than three times as much as the adjoining lot. She pays for Sixteenth street, $708.60. The adjoining lot pays $229.74. Mr. Dillon has a corner lot twenty-six feet on Fourth avenue, and 125 feet on Sixteenth street. He is assessed $1066.14, or for one hundred and fifty-one feet, or four or five lots, as he testifies. We have seen that a lot next to Mrs. Allen's, on Sixteenth street, being twenty-two feet wide by ninety-two

feet deep, is assessed only 229.74. Dillon's lot contains about 1200 more superficial feet than this lot, but he is assessed more than if he owned four lots of the dimensions of twenty-two by ninety-two feet. The same facts appear in the case of Hearn and Eager. Mrs. Eager's assessment for 2643 square feet is as follows : For Irving place, $365.68; Nineteenth street, $844, amounting to $1209.68. The assessment lists can, by stipulation, be referred to by either party, and can be produced for the inspection of the court, if it is deemed necessary.

X. There is an irregularity in each of the assessment lists in the matter of the fees for collection. 1. The ordinance only authorizes the collector and deputy collectors to receive an equal part of two and one half per cent " on all items of assessments collected by the bureau during their term of office, and of two per cent on all unpaid items of assessments returned during their term of office to the bureau of arrears." Even if it be conceded that such a charge can properly be included in the assessment list as a part of the expense of the work, the charges actually included in these lists exceed the per centage allowed by the ordinance. The ordinance clearly does not contemplate that the collector and his deputies, after having ascertained the sum which would amount to two and a half per cent on the items in the list, shall add that amount into the assessment, and then calculate a percentage on it also. Now, by the testimony of Tully, it appears that the total items of the Nineteenth street assessment, exclusive of the collector's fees, amount to $48,695.40, and that two and a half per cent on that sum is $1217.38. Yet the charge for collection is $1248,60. That the total amount of the items in Irving place, excluding collector's fees, is $26,042.80. Two and a half per cent, is $651.07. The charge for collection is $667.76. That the total amount of the items in Sixteenth street list, excluding the collector's fees, is $23,926.10. Two and a half per cent, is

$598.15. Yet the charge for collection is $613.48. 2. Even if the two and a half per cent is calculated as the fees of the collector, and added to the two and a half per cent of the other items, the court will see by a calculation, that the gross percentage will not reach the amount included in each list.

XI. For the reasons above stated, the order below should be affirmed.

*By the Court*, INGRAHAM, P. J.   We have heretofore held that the act of 1870 did not apply to cases which had arisen before the passage of the act, but that such act was prospective only, in requiring the amount erroneously assessed to be deducted.

There can be no doubt of its having been irregular not to lay the crosswalks as directed by the ordinance, and yet to charge upon the owners of lots the cost of laying them.   The cost of laying Nicolson pavement was $4.95 per square yard; the cost of the bridge stones was $1.30 per foot—nearly three times more than the wooden pavement.   It would not require any great stretch of the imagination to find that such a charge was a fraud on the lot owners, which entitles them to the relief sought.

The charge of two and one half per cent for collecting was not, in my judgment, erroneous.   The statute gives that amount on moneys collected.   This charge, as well as the cost of the work, has to be raised by an assessment on the property, and the whole sum when collected is paid into the treasury.   The statutes evidently give the percentage on the whole amount-assessed and collected.

It may well be doubted whether the contract was properly made to include an allowance to contractors for extra compensation, if the work is done before the time fixed in the contract.   No such authority is given by the statute authorizing the assessment, nor does the ordinance directing the improvement provide for it.   We see no author-

ity for the department to agree to pay extra sums to the contractor, not for doing the work, but for doing it quicker than he would otherwise do it. It is opening a door for abuses which, by extending the time for completing the work, may give to a contractor large sums of money for which he would render no equivalent.

Order appealed from affirmed.